THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS IVY, Defendant-Appellant.

First District (2nd Division)   No. 86—0204

Opinion filed February 2, 1988, *nunc pro tunc* December 22, 1987.

James J. Doherty, Public Defender, of Chicago (Gregory W. O'Reilly and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Kathleen A. Bom, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Following a bench trial, defendant, Louis Ivy, was convicted of obstructing justice (Ill. Rev. Stat. 1985, ch. 38, par. 31—4(c)) and was sentenced to a term of three years. On appeal, defendant contends that the trial court erred in (1) finding him guilty beyond a reasonable doubt; (2) allowing the State to question one of its witnesses about defendant's post-arrest silence; and (3) allowing the admission of hearsay evidence presented by the State. For the following reasons, we reverse the judgment of the circuit court.

The evidence adduced at trial established that at about 8 p.m. on May 17, 1985, defendant was a witness to a shooting at 15 South Seeley in Chicago, Illinois. When the police arrived, defendant spoke with Chicago police detective Kenneth Sullivan and his partner, De-

tective Kleinschmidt. Defendant gave the detectives physical descriptions of the two offenders, a man and a woman, who were involved in the shooting. These descriptions were broadcast to other police officers searching for the offenders.

Defendant was taken to the police station to be interviewed. Prior to going to the station to interview defendant, Sullivan and Kleinschmidt went to the hospital to check on the shooting victim and to a few other places. When they finally returned to the station, Sullivan and Kleinschmidt spoke with the defendant. Defendant told them that he lived at 2337 West Adams Street in Chicago. He also stated that the victim had been arguing with a woman in front of a tavern when a man came out of the tavern and shot the victim several times. Defendant again gave the detectives detailed physical descriptions of the man and woman who were involved in the shooting. The descriptions given by defendant ultimately led to the arrest of a man and a woman who were suspects in the shooting of the victim. The arrests of these two people were based solely upon the descriptions provided by defendant.

At approximately midnight, the detectives told defendant that he would be interviewed by an assistant State's Attorney. They left defendant in the interview room, but asked him to wait for the prosecuting attorney. Defendant had not been placed under arrest and the door to the interview room was not locked. About 45 minutes later, Sullivan and Kleinschmidt returned to the room but found that defendant was not there. The detectives unsuccessfully attempted to locate defendant at the address he had given and at the tavern where the shooting had occurred. Sullivan and Kleinschmidt went off duty at about 2:30 a.m. on May 18, 1985, and requested that officers on the next shift try to locate defendant.

Officers Wendt and Pufpaff searched for defendant at various places in the city during the morning following the shooting. At about 11:45 a.m., they went to the address defendant had given as his residence, but were told that defendant did not live there. As they were returning to their car, they noticed a man fitting defendant's description standing in a vacant lot across the street. One of the officers asked him his name and defendant identified himself. He was then asked to return to the station to be interviewed further. The officers brought defendant back to the station and locked him in an interview room.

At about 4:30 p.m., Detectives Sullivan and McKenna spoke with defendant. At that time, however, defendant indicated that he did not want to talk to them anymore about the shooting incident. An assist-

ant State's Attorney joined the detectives for another interview with defendant later that night. The prosecuting attorney informed defendant about the witness protection program, but defendant again refused to discuss the shooting incident, indicating that he feared for his life if he testified. Sometime after midnight, defendant was arrested, charged with obstruction of justice, and advised of his *Miranda* rights. Defendant later told the detectives that the gun they had recovered was not the one used to shoot the victim. He stated that another gun had been used and then discarded somewhere near the scene of the shooting, but defendant refused to help officers look for the gun.

After all the evidence was presented, the trial court found that when defendant left the police station in the early morning hours of May 18, 1985, he was no longer available to the officers investigating the shooting. The court concluded that defendant thereby obstructed the course of justice. Defendant initially asserts that the trial court erred in finding beyond a reasonable doubt that he was guilty of obstructing justice. We must agree.

■ Section 31—4 of the Criminal Code of 1961 states in pertinent part:

> "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information; or
>
> (b) Induces a witness having knowledge material to the subject at issue to leave the State or conceal himself; or
>
> (c) Possessing knowledge material to the subject at issue, he leaves the State or conceals himself." (Ill. Rev. Stat. 1985, ch. 38, par. 31—4.)

The essence of the crime is destruction or concealment of evidence relating to a criminal investigation or prosecution. The trial court held that because he left the police station prior to speaking with the prosecuting attorney, defendant concealed himself while possessing material knowledge of the shooting and thereby had obstructed justice. We find no evidence in the record to support this conclusion.

■ Rather, the evidence reveals that defendant was a witness to the shooting. He voluntarily remained at the police station for approximately four hours, speaking with detectives and offering detailed descriptions of the offenders. Those descriptions led to the arrest of two suspects. Defendant had not been arrested or charged with any crime, and, after giving the detectives the information they sought, he was

left alone in an unlocked interview room. Although the police officer asked defendant to remain in the room, defendant left. Defendant was located later that day at the vacant lot across the street from the address he had given the officers. When approached in the vacant lot, defendant readily identified himself and agreed to return to the police station. He was then locked in an interview room for approximately 4½ hours before being questioned again by the detectives.

■ It is our duty to carefully examine the evidence and, if we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the judgment. (*People v. Bartley* (1962), 25 Ill. 2d 175, 182 N.E.2d 726; *People v. Smith* (1971), 3 Ill. App. 3d 64, 278 N.E.2d 551.) Based upon the record before us, we conclude that defendant cooperated with the police detectives and that his cooperation enabled the police to locate and arrest two suspects in the shooting. We find that the evidence is wholly insufficient to prove defendant guilty beyond a reasonable doubt of obstruction of justice. Because of our disposition on this issue, we find it unnecessary to address the other issues raised by defendant on appeal.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

SCARIANO, P.J., and STAMOS, J., concur.